UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 09-166** |
| **TODD DAGGS** | **SECTION: "B"** |

### ORDER AND REASONS

Before the Court is Todd Daggs's opposed motion for reduction of sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A). (R.D. ## 447, 450, 455, 457, 460 & 462). Following a hearing on September 14, 2022 with all parties along with reasons given during that hearing and for reasons assigned below, **IT IS ORDERED** that the motion is **GRANTED** by amending the sentence in the following respects:

Defendant Todd Daggs is committed to the custody of the Federal Bureau of Prisons for a total term of **310 months.** The latter term consists of **190 months as to Count 1** (Conspiracy to violate the Federal Controlled Substances Act, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)); **120 months as to Count 2** as originally imposed (Possession of firearm by a convicted felon, 18:922(g)(1); 924(a)(2)); and **188 months as to Counts 4** (Violation of Federal Controlled Substances Act, 21:841(a)(1),841(b)(1)(C) and (D)), **and 6** (Violations of Federal Controlled Substances Act, 21:841(a)(1); 841(b)(1)(C)), **with the foregoing sentences to be served**

1

**concurrently as originally imposed. In addition**, the defendant also is sentenced to **60 months imprisonment as to Count 3** (Possession of firearm in furtherance of drug trafficking offense), which are **to be served consecutively as to the terms imposed as to Counts 1, 2, 4, and 6, and 60 months as to Count 5** (Second conviction for possession of firearms in furtherance of drug trafficking crimes, 18 U.S.C. § 924(c)(1)(A),(D); § 924(c)(1)(D)), which are **to be served consecutively as to the terms imposed as to Counts 1, 2, 3, 4, and 6**. In addition to the special conditions orally announced during the recent hearing regarding participation in HiSet or vocational training and cognitive behavioral therapeutic treatment programs, the sentence as originally imposed for financial sanctions, supervised release terms and conditions, and recommendations to the Bureau of Prisons remain unchanged. See Rec. Doc. 305.

## Background

Todd Daggs is serving life in prison plus 30 years for drug trafficking and firearms convictions. If sentenced for these same crimes today, he would have been eligible for a more lenient sentence. At the time of his sentencing in 2010, the life sentence imposed was mandatory for his drug trafficking conspiracy conviction. And, at the time of sentencing, a mandatory 30-year consecutive sentence was imposed for his second conviction for possession of a firearm in furtherance of a drug trafficking crime.

Since 2010 significant criminal justice reforms have been implemented to address this country's overincarceration problem and to avoid disproportionate or excessively long prison terms.

If he was sentenced today, Mr. Daggs would not face the same penalties: instead of mandatory life, he would face a mandatory minimum sentence of 10 years for the drug conspiracy conviction. *See* 21 U.S.C. § 841(b)(1)(A).  And instead of the 30-year consecutive mandatory minimum (five years for the first and 25 years for the second § 924(c) conviction), he would face a 5-year mandatory minimum sentences for the first § 924(c) conviction that would run consecutive to the four counts of convictions noted above plus an additional 5-year sentence that would run consecutive to the latter § 924(c) sentence **and** all other sentences as noted above.[1]  *See* 18 U.S.C. § 924(c)(1)(D).  Congress declined to deem some of these reforms retroactively applicable.

After a jury trial, Todd Daggs was convicted of multiple offenses: drug trafficking conspiracy (Count 1); two separate possessions of firearms in furtherance of a drug trafficking crime (Counts 3 and 5); two separate possessions of small quantities of drugs with the intent to distribute (Counts 4 and 6); and being a felon in possession of a firearm (Count 2). Given Mr. Daggs's two

---

[1] At the time federal sentencing, Daggs had two prior felony convictions in state court for possession with intent to distribute marijuana and possession of crack cocaine. R.D. 338, pp. 23-4, ¶¶ 117 & 118. Further aggravating his own misconduct, Daggs committed the instant federal offenses while serving a probated sentence for the latter cocaine conviction. Id., p.24, ¶ 121.

3

prior convictions for felony drug offenses, on December 1, 2010, then-District Judge Engelhardt sentenced Mr. Daggs to mandatory life in prison for Count 1; 120 months for Count 2; 188 months for Counts 4 and 6; 60 months for Count 3; and a mandatory 300 months for Count 5. The sentences for Counts 1, 2, 4, and 6 are concurrent, while the sentences imposed for Counts 3 and 5 are consecutive. The Fifth Circuit affirmed the district court's judgment. Daggs' petitions for habeas relief and relief from judgment were subsequently denied.

Relief under Sections 401 and 403 of the First Step Act was denied because the Act's non-retroactivity provisions rendered Daggs ineligible. *United States v. Daggs*, No. CR 09-166, 2020 WL 6559408, at *2 (E.D. La. Nov. 9, 2020). Notably, the government did not dispute: (i) if Daggs had been sentenced after the First Step Act was enacted, he would not face a mandatory life sentence; and (ii) if Daggs had been sentenced after the First Step Act was enacted, a stacked 25-year mandatory minimum imposed for the second § 924(c)(1) offense could not have been imposed.

As discussed *infra*, some courts have determined that significant sentencing disparities constitute or may serve as a predicate to finding extraordinary circumstances, thusly warranting sentence reductions under the First Step Act's compassionate release-sentence reduction provisions. Being ineligible to invoke the forward-looking reforms codified in

4

Sections 401 and 403, Daggs now seeks a sentence reduction on the ground that the gross disparity between the sentence he is serving versus that he would face today constitutes extraordinary and compelling circumstances under the compassionate release provision contained in 18 U.S.C. § 3582(c)(1)(A), as amended.

I.

A.

Courts generally "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). Few exceptions apply. Since passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), federal courts "may reduce the term of imprisonment" upon an inmate's request and demonstration of certain criteria. § 3582(c)(1)(A); *see also United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020)(As amended, § 3582(c) provides that the Court "on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'").[2]

"The First Step Act and COVID-19 have redefined the compassionate release landscape." *United States v. Jones*, 980

---

[2] Before 2018, only the Bureau of Prisons could request that a court modify a prisoner's sentence.

5

F.3d 1098, 1100-01 (6th Cir. 2020)("The First Step Act of 2018's provision allowing incarcerated persons to file their own § 3582(c)(1)(A) motions coupled with COVID-19's pernicious presence in federal prisons triggered a massive upswing in imprisoned persons seeking compassionate release; 10,940 persons applied for compassionate release in the first three months of the pandemic alone.").

Conflicts in interpreting this relatively new statutory remedy inform our analysis. The Court first addresses a conflict concerning eligibility and the scope of "extraordinary and compelling" reasons, considering any "applicable" Sentencing Commission policy. Ultimately, the Court proceeds to determine whether, assuming Mr. Daggs is eligible for relief, consideration of applicable § 3553(a) factors militate against or in favor of a sentence reduction.

*B.*

Through § 3582(c)(1)(A), Congress allows courts to consider inmate requests seeking sentence reductions

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier....

In other words, the prisoner may file a motion in court the earlier of: exhausting administrative rights to appeal the BOP's failure to bring a motion, or 30 days after the warden's receipt of the prisoner's request. *See United States v. Jefferson*, 831 Fed.Appx. 685, 686 (5th Cir. 2020) (unpublished, *per curiam*). "Both [exhaustion] routes," the Fifth Circuit has observed, "begin with the defendant requesting that 'the Bureau of Prisons' 'bring a motion on the defendant's behalf.'" *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020), *cert. denied*, 2020 WL 7132458 (U.S. 12/7/20).

Here, the government concedes that Daggs has sufficiently exhausted his administrative remedies, so exhaustion is found undisputed.

## II.

### A.

Three substantive criteria guide the Court's discretion in determining whether an incarcerated person has demonstrated that a sentence reduction is warranted:

- "extraordinary and compelling reasons warrant ... a reduction";[3]

---

[3] "Extraordinary and compelling reasons" is found at subsection (i); Daggs is ineligible for relief under subsection (ii) because he is not "at least 70 years of age," and he has not "served at least 30 years in prison[.]" 18 U.S.C. § 3582(c)(1)(A)(ii).

7

- the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission"; and
- the applicable sentencing factors in § 3553(a) support a reduction.

*See* 18 U.S.C. § 3582(c)(1)(A).[4] As the petitioner, Daggs has the burden to show that a sentence reduction is warranted. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014) Even if a compassionate release petitioner is eligible for relief (i.e., he demonstrates that extraordinary and compelling reasons warrant a sentence reduction), consideration of applicable § 3553(a) factors may nevertheless persuade the Court to exercise its discretion to deny the motion. *See Chambliss*, 948 F.3d at 693-94 (affirming the district court's denial of motion seeking sentence reduction in light of the § 3553(a) factors, notwithstanding the petitioner's terminal disease constituting an extraordinary and compelling reason for a reduction).

*B.*

---

[4] Relying on the parallel language of Sections 3582(c)(1) and (c)(2), the Sixth Circuit has determined that *Dillon v. United States*, 560 U.S. 817 (2010) confirms that § 3582(c)(1)(A) calls for a sequenced three-part inquiry, with the second step inapplicable to prisoner motions because there is no "applicable" policy statement to consult. *See United States v. Jones*, 980 F.3d 1098, 1106-07 (6th Cir. 2020) (describing § 3582(c)(1)(A)'s phrasing as "confusing" with "oddly placed commas" and ultimately determining that the second "applicable policy statement" portion of the step is inapplicable to prisoner motions).

Congress does not define "extraordinary and compelling reasons" but, rather, delegated that task to the Sentencing Commission, which defines "extraordinary and compelling reasons" in the advisory notes to a policy statement found at U.S.S.G. § 1B1.13. However, the resounding consensus in the case literature holds that U.S.S.G. § 1B1.13 is not applicable to defendant-filed motions for compassionate release under the First Step Act. So far, eight Circuit Courts of Appeal, including the Fifth Circuit, have determined that the First Step Act rendered § 1B1.13 inapplicable (or otherwise downgraded it from binding to merely helpful authority) in cases where an incarcerated person files a motion for compassionate release such that district courts have full discretion to determine what "extraordinary and compelling" reasons justify compassionate release. *See, e.g.*, *United States v. Shkambi*, 993 F.3d 388, 392-93 (5th Cir. 2021)(rejecting the government's position that, in reviewing an incarcerated individual's motion seeking sentence reductions under 18 U.S.C. § 3582, the Court is bound by the existing policy statement in U.S.S.G. § 1B1.13; observing "[j]ust as the district court cannot rely on a money-laundering guideline in a murder case, it cannot rely on the BOP-specific policy statement when considering a non-BOP § 3582 motion."); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021)(holding that "[t]he policy statement's inapplicability is plain on its face."); *United States v. Aruda*,

993 F.3d 797, 802 (9th Cir. 2021)(*per curiam*)(Sentencing Commission's current policy statement was not binding on the district court in ruling on defendant's motion for compassionate release); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021)(rejecting the government's argument that the existing policy statement remains binding on district courts where a defendant files a motion for sentence reduction); *United States v. McCoy*, 981 F.3d 271, 281-82, 286-87 (4th Cir. 2020)(joining the Second, Sixth, and Seventh Circuits in holding that there currently exists no "applicable policy statement" governing prisoner motions such that district courts may consider any extraordinary and compelling reason for release raised by a petitioner, including the severity of the defendants' sentences, coupled with the disparity between those sentences and sentences they would receive today); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020)(because the U.S.S.G. lacks an "applicable" policy statement, "the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion" although the Sentencing Commission's analysis may guide discretion); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020)(where incarcerated persons seek compassionate release, district courts "have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020)(generally holding that the First Step Act allows courts

to exercise discretion, unconstrained by U.S.S.G. § 1B1.13, to determine what reasons are "extraordinary and compelling" and specifically finding that an unduly lengthy sentence is a circumstance a court may consider in determining whether extraordinary and compelling reasons justify a sentence reduction). So far, the Eleventh Circuit holds the leading minority view to the contrary, *United States v. Bryant*, 996 F.3d 1243, (11th Cir. 2021) (holding that Section 1B1.13 is an applicable, binding policy statement for all Section 3582(c)(1)(A) motions), which created a Circuit split.

In the majority view, an unduly lengthy sentence is a circumstance a court may consider in determining whether extraordinary and compelling reasons justify a sentence reduction. *See, e.g., McCoy* 981 F.3d at 286 (holding that district courts can find severity of a defendants sentence and the disparity between this sentence and sentences handed down under the First Step Act as extraordinary and compelling reasons); *United States v. Montalvo-Borrero*, No. 11-CR-133, 2021 WL 510400, at *2 (E.D. Wis. Feb. 11, 2021)(granting relief where the no longer applicable 841 enhancements alter the mandatory minimum from life to 10 years); *United States v. Ledezma-Rodriguez*, 472 F.Supp.3d 489, 504-6 (S.D. Iowa 2020) (granting relief where the defendants mandatory sentence for drug charge would be 10 years rather than life); *United States v. Day*, 474 F.Supp.3d 790, 804 (E.D. Va. 2020)

11

(granting relief where mandatory minimum would be 15 years instead of life).

Mindful that the policy statement may be helpful but is not binding, the Court turns to consider whether Mr. Daggs has shown that extraordinary and compelling reasons warrant relief. In light of binding Fifth Circuit authority in *Shkambi*, the parties no longer quarrel over whether the Court's discretion is limited by the Sentencing Commission's policy statement in determining what constitutes extraordinary and compelling reasons. Nonetheless, the government contests Mr. Daggs' eligibility for relief.

The government argues that while the court is not bound by the policy statement found in U.S.S.G. § 1B1.13, it should still be considered in determining whether Mr. Daggs is eligible for relief. It supports this argument with three reasons. First, the holding in *Shkambi* does not explicitly overrule the holding in *Thompson v. United States*. *See* 984 F.3d 431, 433 (5th Cir. 2021) (Although not dispositive, the commentary to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 informs our analysis as to what reasons may be sufficiently "extraordinary and compelling" to merit compassionate release.). Second, being informed by § 1B1.13 does not violate the holding in *Shkambi* or *Thompson*. Third, the practice of district courts to look to non-binding commentary for guidance is consistent with the decisions of other circuit courts. We find the foregoing case authorities,

12

particularly from the Fifth Circuit Court of Appeals, illuminate the totally discretionary ability of courts to determine how much, if any, consideration § 1B1.13 receives in determining the extraordinary and compelling circumstances.

The government ends by invoking 28 U.S.C. § 994(t), which states that rehabilitation alone cannot be considered an extraordinary and compelling reason. Further asserting that a plain text reading of the phrase "extraordinary and compelling" provides no doubt that Daggs' sentence is not unusual or demanding of attention. The government also points out that Daggs has alleged no health issues which warrant his release and that he instead relies entirely on the severity of his sentence in comparison to recent changes in the law. Again pointing to the non-retroactivity of the First Step Act, the government contends that this disparity cannot be a factor in determining eligibility for relief. Finishing with editorial commentary, the government argues the interpretation of the First Step Act's exceptional and compelling circumstances language by the overwhelming majority of reviewing courts threaten the principle of sentence finality and creates a loophole in the statutory guidelines. We disagree.

C.

First, it is clear from the relevant case law cited above that courts are not bound by § 1B1.13 in determining whether circumstances are sufficiently extraordinary and compelling.

13

Instead, upon a properly filed motion from an affected prisoner, it is at the discretion of the court to reasonably determine whether extraordinary or compelling circumstances exist. The court can look to a variety of persuasive authority, including § 1B1.13 and the laundry list of previous district court cases that parties' have provided, along with binding Fifth Circuit and statutory authorities.

Given the discretionary authority to determine whether sufficiently "exceptional and compelling" reasons exist here, we have found convincing persuasive authority from a variety of district courts where both sentence severity and disparity, in the wake of the First Step Act, were found to be exceptional and compelling reasons. *See, e.g.*, *United States v. Williams*, No. 5:12-cr-14, 2020 U.S. Dist. LEXIS 179932, at *21-24 (W.D. Va. Sept. 29, 2020) (granting compassionate release where a defendant sentenced to mandatory life would now face a 10-year minimum); *United States v. Day*, 474 F.Supp.3d 790, 804 (E.D. Va. 2020) (granting relief where mandatory sentence would now be 15 years rather than life); *United States v. Ledezma-Rodriguez*, 472 F.Supp.3d 498 (S.D. Iowa 2020) (granting relief where the defendant's mandatory sentence on a drug count would be 10 years rather than life); *see also United States v. Vigneau*, 473 F.Supp.3d 31, 36 (D.R.I. 2020) ("Courts ... have determined that unusually long sentences by today's standards could support an 'extraordinary and compelling' reason to reduce

14

a sentence."); *United States v. Brown*, No. 06-CR-327, 2020 WL 7401617, at *5 (E.D. Wis. Dec. 17, 2020) (Extraordinary and compelling reasons found because of a dramatic change when the First Step Act narrowed the category of offenses that triggered the once higher penalties. Now, a prior conviction must be a "serious drug felony"—rather than a "felony drug offense"—to increase the penalties under § 841(b)(1), *citing United States v. Godinez*, 955 F.3d 651, 654-55 (7th Cir. 2020)); *see in another context United States v. Young*, 458 F.Supp.3d 838, 848 (M.D. Tenn. 2020)(finding the drastic change effect by the First Steps Act's amendment of § 924(c) constitutes an extraordinary and compelling reason for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *7 (D. Utah Feb. 18 2020), aff'd 993 F.3d 821 (10th Cir. 2021) (Changes in how § 924(c) sentences are calculated is a compelling and extraordinary reason to provide relief.); *United States v. O'Bryan*, No. 96-10076-03-jtm, 2020 WL 869475 (D.Kan. Feb. 21, 2020)(granting early release for a defendant with a lengthy sentence as a result of stacked § 924(c) penalties).

    As noted earlier, the disparity between the instant sentence imposed in 2010 and a sentence under current statutory laws for the same offenses is significant, i.e. a mandatory life sentence as opposed to a 10-year mandatory minimum sentence.

*D.*

Once an inmate satisfies the mandatory exhaustion requirement and demonstrates extraordinary and compelling reasons for relief, the statute directs the court to consider the factors set forth in 18 § 3553(a) to the extent they are applicable. *See, e.g., United States v. Shkambi*, 993 F.3d at 393 (The district court is bound by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)).

The § 3553(a) sentencing factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the offense's seriousness or promote respect for the law or to afford adequate deterrence, protect the public from further crimes, and to provide needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for the applicable category of offense or defendant; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records; and (7) the need to provide restitution to any victims of the offense. Balancing the applicable factors falls within the Court's discretion and mere disagreement with how the factors are balanced is insufficient to warrant relief on appeal. *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

We begin by recognizing that the § 3553(a) calculus is different from when Judge Engelhardt imposed the life plus 30-year sentence. As shown above, Congress has dramatically reduced the sentencing outcomes that drug offenders like Daggs would otherwise face today. That different calculus impacts sentencing factors. Congressional action reflects sentencing reductions for certain drug convictions in an overall effort to consider the need for public safety, reduce prison populations, ameliorate sentence disparities between powder and crack cocaine, eliminate racial inequities in sentencing, and other concerns.[5-6]

The elimination of a mandatory life sentence for certain drug convictions to a 10-year mandatory minimum sentence generally provides new guidance for pronouncing just punishment but not more than necessary to meet the goals of sentencing, particularly "the offense(s) and history and characteristics of the defendant, need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, the kinds of sentences available, the kinds of sentence and sentencing range established for the applicable category of offense or defendant,

---

[5] The First Step At of 2018: An Overview - chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://crsreports.congress.gov/product/pdf/R/R45558

[6] "The First Step Act sought to address racial inequities and to lessen punishments for nonviolent drug offenders." https://www.findlaw.com/criminal/criminal-procedure/sentencing-and-prison-reform--the-first-step-act.html

any pertinent policy statement, and the need to avoid unwarranted sentence disparities among defendants with similar records." 18 § 3553(a)(1) thru (6). The dramatic changes in the sentencing calculus along with above-related sentencing factors further appear to favor modification of Daggs' sentence. However, we must still consider his post-sentencing conduct as well as determine whether if released he still poses a danger to the public.

According to Bureau of Prisons (BOP) records, beginning in 2011 thru 2017 Daggs has been sanctioned for disruptive behavior while in BOP custody for, among other things, attempting to introduce drugs/alcohol into a secure institution, phone/email abuse, using other inmates' phone and email accounts, circumventing Trulincs[7] procedures by using a third-party provider to send messages to outside cell phones, and possession of an unauthorized item. R.D. 450-4, pp. 1-3. BOP records also show that throughout his confinement, Daggs has completed several educational and self-improvement courses while in custody. To his credit also, his last disciplinary infraction occurred over five year ago without any repeat. He has served nearly half of the prison time he would now be eligible to receive today.

---

[7] Trust Fund Limited Inmate Computer System (TRULINCS) is messaging system that gives inmates a regulated method to "send electronic messages to…maintain contact with persons in the community." See chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.bop.gov/policy/progstat/5265_013.pdf

The government correctly shows, without express objection, that if Daggs was sentenced after the First Step Act became effective, his total statutory sentence would be at least 20 to 25 years.[8]  As to Count 1, the drug conspiracy, he would face a mandatory minimum of 10 years imprisonment up to a maximum term of life.  21 U.S.C. § 841(b)(1)(A).  The applicable sentencing guidelines were well above ten years imprisonment.  With an offense level of 34 and a criminal history category III, the sentencing guidelines imprisonment range is 188 to 235 months. As to the two §924(c) firearm possession counts, Daggs would receive a total of ten years in prison, comprising five years imprisonment as to Count 3, and another five years imprisonment as to Count 5, running consecutive with the latter five-year sentence for Count 3 **and** any other sentence, i.e. Counts 1, 2, 4, and 6.  See 18 U.S.C. § 924(c)(1)(A),(D).  While the First Step Act required that a prior §924(c) conviction must be final before the enhancement could apply, it did not modify the requirement that separate 924(c) convictions must run consecutive to each other **as well as** any other sentence.  See 18 U.S.C. § 924(c)(1)(D).  Accordingly, if sentenced under the current versions of the First Step Act, Daggs could receive at least a 25-year imprisonment sentence.

---

[8] R.D. 450, p. 21, footnote 7.

If the court gave a guidelines sentence, Daggs's total prison sentence would have been between 308 months and 355 months. He has currently served roughly 142 months. Courts granting a reduction to time served consider the comparable sentence today before making such a substantial reduction. *See Ledezma-Rodriguez,* 472 F. Supp. 3d at 508 (granting time-served sentence where the defendant "has served five years more than what Congress has since determined to be minimum punishment for his conduct."). As with the original sentencing judge, we find a guidelines sentence provides just punishment but not more than necessary to meet the goals of sentencing, particularly in promoting respect for law, discouraging recidivist behavior, and other goals and factors discussed *supra*.

Accordingly, **IT IS ORDERED** that Mr. Daggs's motion for a sentence reduction is **GRANTED** by amending the sentence as announced orally and hereinabove.

New Orleans, Louisiana, September 20, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE